# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Commonwealth of Pennsylvania   :
                               :
            v.                 :   No. 1695 C.D. 2018
                               :   Argued:  December 10, 2019
Gregoreos Giaffes,             :
                Appellant      :


**BEFORE:**   **HONORABLE RENÉE COHN JUBELIRER,** Judge
          **HONORABLE PATRICIA A. McCULLOUGH,** Judge
          **HONORABLE ANNE E. COVEY,** Judge


**OPINION NOT REPORTED**


**MEMORANDUM OPINION BY**
**JUDGE COHN JUBELIRER**                **FILED:  January 10, 2020**


Gregoreos Giaffes (Appellant) appeals from an Order of the Court of Common Pleas of Cumberland County (common pleas) that revoked Appellant's authority to act as a bail bondsman in that county.  Appellant asserts that as a licensed surety agent, he is not subject to Section 5746 of the Judicial Code, 42 Pa. C.S. § 5746, upon which common pleas relied to revoke Appellant's authority.  Moreover, Appellant argues that even if he was subject to Section 5746, there is no evidence he committed malfeasance and common pleas erred in considering his guilty plea in Maryland to selling cigarettes without a license.  Upon review, we affirm.

# I.    BACKGROUND

## A.    The Petition

On November 3, 2017, the Commonwealth of Pennsylvania (Commonwealth), through the Cumberland County District Attorney's Office (DA), filed a Petition for Suspension or Revocation of Authority to Conduct Business in Cumberland County (Petition) against Appellant. Therein, the Commonwealth alleged good cause existed to revoke Appellant's authority pursuant to Section 5746(b) of the Judicial Code. Specifically, the Commonwealth averred Appellant "fraudulently obtained a license from the [Pennsylvania Insurance D]epartment by lying on both his Non[-]Resident and Resident Bondsman's applications" in violation of Section 5746(b)(2). (Petition at 2.) In particular, the Commonwealth claimed Appellant falsely stated he had no misdemeanor convictions when, in fact, he pleaded guilty to a misdemeanor charge of selling cigarettes without a license in Maryland.[1] Based on this conviction, the Commonwealth also asserted good cause existed to revoke Appellant's authority under Section 5746(b)(3), which permits consideration of criminal convictions when determining whether to revoke a bondsman's authority to conduct business. (*Id.* at 3.)

Finally, the Commonwealth alleged good cause existed based upon Appellant's interference with the administration of justice in violation of Section 5746(b)(6). Related to this basis, the Commonwealth alleged Appellant "fraudulently applied for and obtained . . . bail piece[s] authorizing him to apprehend and detain" two of his clients based upon false representations to the court and wrongfully withheld client funds. (*Id.* at 3-5.) As to the first client, a male, the

---

[1] The Petition also alleged Appellant "received a deferred judgement [sic]" for another charge in Maryland, (Petition at 2), but that offense did not play a factor in common pleas' decision, (Hr'g Tr. at 64).

Commonwealth alleged Appellant told the court the client "left [the] state without notice and no new address or notice," was a "[f]light [r]isk," and "[a]ll telephone numbers [we]re disconnected," none of which was true. (*Id.* at 3 (citing Petition of Surety for Bail Piece, Reproduced Record (R.R.) at 99).) The Commonwealth asserted Appellant falsified his statement in an effort to pressure his client into paying him money over a contract dispute. Based upon these "material misrepresentation[s]," the Commonwealth averred a judge issued a bail piece, and when Appellant apprehended the client, Appellant took $1050 from him under "false pretenses." (*Id.*) With regard to the second client, a female, the Commonwealth alleged Appellant falsely represented the client was a "[f]light risk," was "on the [r]un," "refuse[d] to listen to [the] DA's office and [Appellant]," and provided a false address. (*Id.* at 4 (citing Petition of Surety for Bail Piece, R.R. at 94).) According to the Commonwealth, in reality, the client had appeared in court, was recently sentenced, reported her whereabouts to her probation officer, and was in good standing with probation. As for the allegation that Appellant wrongfully withheld client funds, the Commonwealth asserted Appellant obtained the second client's debit card and withdrew more than he was entitled and Appellant also returned only $300 of the $400 another woman paid for services, which were not rendered. (*Id.* at 5.)

## B. The Hearing

A hearing on the allegations in the Petition was held on December 19, 2017. At the hearing, the Commonwealth presented multiple witnesses, including a state trooper, who testified he investigated Appellant's prior criminal history and

3

discovered the Maryland conviction. (Hr'g Tr. at 4-5.) A certified copy of the conviction was admitted without objection. (Commonwealth Ex. 1, R.R. at 68-74.)

The Division Chief for the Field Investigations Division of the Pennsylvania Insurance Department's Bureau of Licensing and Enforcement (Division Chief) testified as to applications Appellant filed in which Appellant represented he was never convicted of a misdemeanor offense. (Hr'g Tr. at 10-12.) Copies of the applications were admitted without objection. (Commonwealth Exs. 3-4, R.R. at 77-93.) The Division Chief testified this information would have been "relevant and material" in evaluating the applications. (Hr'g Tr. at 12.) On cross-examination, the Division Chief acknowledged that he could not say whether Appellant's applications would have been denied had the Department known of the convictions. He further stated that the convictions were subsequently reported to the Insurance Commissioner who, at that time, had not yet made a determination.

Next, one of Appellant's clients testified as to her dealings with Appellant, alleging Appellant knew where she was staying, but still picked her up, and withdrew more than he was authorized. (*Id.* at 14-16.) The client's probation officer testified she was aware of the client's whereabouts. (*Id.* at 21.) Another witness testified she paid Appellant $400 to help her boyfriend but Appellant returned only $300 after telling her he could not help. (*Id.* at 25-27.)

The Commonwealth's final witness was the male client for whom Appellant allegedly obtained a bail piece when the client fell behind on payments. That client testified he was to pay Appellant $200 every two weeks but admitted he was behind on payments. (*Id.* at 31.) He spoke to Appellant by telephone on a Wednesday and advised he would have money to Appellant that Friday. (*Id.* at 32.) However, Appellant obtained a bail piece and picked him up in the interim. (*Id.*) While being

4

taken to the car, the client told Appellant he had some money upstairs that Appellant could take in exchange for not apprehending him. (*Id.* at 34-35.) Appellant took the client back to the apartment and took the money, but still took the client to jail. (*Id.* at 35.) The client denied moving out of state and denied having a phone that was disconnected. (*Id.* at 32-33.) He admitted to visiting his mother out of state but claimed he did not know that was a condition of his bail. (*Id.* at 32.)

Appellant's first witness was the above client's former girlfriend. She testified that she watched the client's child while he was in California and that she had been in contact with the client via text messaging throughout his time in California with no issues in getting in touch with him. (*Id.* at 39-41.)

Appellant also called a bail bondsman who was with Appellant on the night he took the above client into custody. He testified Appellant did not take any money but was offered it, "not in exchange for any deals or any leniency, but as a partial repayment of the current outstanding debt, with no promises made between any party." (*Id.* at 42.) He also testified that bondsmen do not normally pick people up on bail pieces because it is expensive. (*Id.* at 43.)

Another witness who was present that evening testified he was with Appellant that night because he was interested in the bail bondsman business. He said he was not present when the money was exchanged but claimed Appellant told him afterwards that the client paid Appellant thinking the client's bail was being revoked for nonpayment. (*Id.* at 45.)

Appellant also called an assistant district attorney who believed Appellant's other client was a flight risk based upon Appellant's representations. (*Id.* at 48.)

Finally, Appellant testified on his own behalf. As for the Maryland offense, Appellant claimed it was a summary ticket for selling cigarettes when his license

had lapsed. (*Id.* at 50.) He pointed out his male client admitted on the stand that he had left the state and that when he tried to contact that client, the client's phone, which was prepaid, was out of time. (*Id.* at 52-55.) Appellant denied apprehending the client for nonpayment, asserted instead it was because he left the state. Appellant explained he had no financial incentive to apprehend the client because bail pieces are expensive. (*Id.* at 55.) In addition to the cost of filing for a bail piece, which was $23, Appellant testified recovery people are paid five percent of the bail, which would have been $5000 based on the client's $100,000 bail. (*Id.*) According to Appellant, the client only paid $2600 down and made none of the biweekly payments. Therefore, Appellant stated he "was losing money from the start, but it's better for [him] to pay the recovery people, put him back in, than be on the hook for a hundred thousand." (*Id.*) He claimed the client gave him the money on his own. (*Id.* at 56-57.) As for the other client he picked up on a bail piece, he said at the time the docket was still showing her case was open. (*Id.* at 60.) Appellant also contended he refunded the full amount to the other person. (*Id.* at 63.) Appellant testified he writes 50 to 75 bonds per month for $2 million in liability and in 2 years has filed for 5 to 6 bail pieces. (*Id.* at 62.)

### C. Common Pleas' Decision

Following the conclusion of the testimony, common pleas issued its decision from the bench. It found the Maryland offense was a misdemeanor, which was grounds to revoke Appellant's authority. Common pleas called the bail pieces a "close call." (*Id.* at 65.) Common pleas stated it was not holding the allegations involving the female client against Appellant, but found Appellant made false statements related to the male client's phone being disconnected. (*Id.*) Common

6

pleas also found that Appellant took money from the male client although he knew he was going to arrest him. (*Id.*) Common pleas then issued an order finding good cause shown to revoke Appellant's authority to act as a bail bondsman in Cumberland County.

Thereafter, Appellant filed a notice of appeal and a motion to reinstate pending disposition of the appeal.[2] Common pleas issued an order directing Appellant to file a concise statement of errors complained of on appeal pursuant to Rule 1925(b) of the Pennsylvania Rules of Appellate Procedure, Pa.R.A.P. 1925(b) (Statement). In his Statement, Appellant alleged: (1) the Commonwealth lacked standing to file the Petition without joining the Insurance Commissioner as a co-plaintiff; (2) the Commonwealth did not demonstrate Appellant hindered the administration of justice; (3) the Maryland offense was not a misdemeanor under Pennsylvania law; and (4) Appellant's due process rights were violated. Common pleas also granted Appellant's motion for reinstatement in part, providing Appellant could continue to supervise and service those bonds he insured prior to common pleas' Order.

Common pleas subsequently issued an opinion pursuant to Rule 1925(a), responding to the issues raised in Appellant's Statement and explaining the rationale for its Order in greater detail. In the Rule 1925(a) Opinion, common pleas found Appellant's first and fourth arguments related to standing and due process waived on the basis that Appellant had not previously raised either issue. (Rule 1925(a) Opinion (Op.) at 5-6.) In response to Appellant's second issue, the sufficiency of the evidence, common pleas found the Commonwealth did meet its burden of

---

[2] Appellant's original counsel appealed to the Superior Court. Subsequently, Appellant's current counsel filed an application seeking to transfer the appeal to this Court. Based upon that application, the Superior Court transferred the appeal to this Court.

7

showing Appellant obtained bail pieces based upon false information and therefore hindered or attempted to hinder the administration of justice. Common pleas reasoned that "the allowance of [a] bail bondsman to post bail on a defendant's behalf[] is a tool of the justice system," which "ensure[s] the appearance of defendants while freeing-up scarce beds in the county prisons." (*Id.* at 5.) Common pleas found Appellant's "actions resulted in the improper incarceration of his clients" and "[t]his misuse of the justice system effectuated a most grievous injustice upon those individuals." (*Id.*) In addition, common pleas found Appellant "needlessly used both the court and the prison to detain his clients when no violation of bail conditions actually existed," which "wasted the [c]ourt's time and the justice system's finite resources." (*Id.*)

As to Appellant's argument that the conviction in Maryland was not a misdemeanor in Pennsylvania, common pleas disagreed. Common pleas stated Appellant was fined $500[3] and received one year of probation, which exceeds the prescribed limits for summary offenses in Pennsylvania, which is a maximum $300 fine and 90 days of incarceration. (*Id.* at 6 (citing 101 Pa. Code § 15.66).) In addition, common pleas found Appellant failed to disclose this conviction on his applications.

Following the issuance of its Rule 1925(a) Opinion, common pleas learned of an error related to the docketing of filings in the case involving Appellant's female client. As a result, common pleas indicated that it was "not hold[ing] the facts of [that] case against [Appellant]" and that its decision was based "solely on the

---

[3] In its Rule 1925(a) Opinion, common pleas incorrectly states that Appellant was subject to a $500 fine and one year of probation. However, when common pleas issued its ruling from the bench immediately following the close of the hearing, common pleas correctly stated the fine was $100.

malfeasance in [the male client's] case and [Appellant's] intentional misrepresentations within his applications." (May 7, 2018, Amended Order.)

## II.   PARTIES' ARGUMENTS

Before this Court,[4] Appellant no longer asserts lack of standing or a violation of due process. He now asserts common pleas lacked subject matter jurisdiction to revoke his authority to post bail because he is a licensed surety agent, not a bail bondsman.[5] According to Appellant, Section 5746 governs only bail bondsmen, something this Court recognized in *Commonwealth v. Liberty Bail Bonds*, 8 A.3d 1031 (Pa. Cmwlth. 2010). He further argues he did not commit malfeasance because the male client admitted to leaving the state. He also contends there is no evidence of where the client lived or that the client had a working telephone. According to Appellant, the client was a legitimate flight risk. Moreover, Appellant denies asking for payment from the client in lieu of apprehending him. Finally, Appellant maintains common pleas erred in considering the Maryland offense for illegally selling cigarettes. He claims the offense would have been graded a summary offense in Pennsylvania and asserts common pleas should have focused on the elements of the offense not the penalty when evaluating its effect. Because the offense should be treated as a summary offense, Appellant argues he had no obligation to report it on his applications.

---

[4] On October 11, 2019, Appellant filed an application for supersedeas, which the Court denied on November 8, 2019.

[5] Generally, issues not raised in a trial court that are raised for the first time on appeal are considered waived; however, the issue of subject matter jurisdiction may be raised at any stage in the proceedings by either the parties or a court *sua sponte*. *H.R. v. Dep't of Pub. Welfare*, 676 A.2d 755, 759 n.8 (Pa. Cmwlth. 1996).

9

The Commonwealth responds that there is no evidence of record demonstrating Appellant is a licensed surety agent. It maintains the evidence suggests he is a bail bondsman, citing the "simplistic two-party relationship" that witnesses described and the lack of any third-party surety or guarantor, such as an insurance company. (Commonwealth's Brief at 10.) Accordingly, the Commonwealth argues common pleas had subject matter jurisdiction under Section 5746 to act. Furthermore, the Commonwealth argues three of the six grounds listed in Section 5746(b) to revoke Appellant's authority to act as a bail bondsman existed, namely, fraudulently obtaining a license, being convicted of a criminal offense, and interfering with the administration of justice. The Commonwealth argues Appellant pleaded guilty to a misdemeanor offense in Maryland and did not report the conviction on his applications. It further argues that the evidence establishes that Appellant sought to incarcerate clients for improper reasons, which interfered with the administration of justice. Accordingly, it asks this Court to affirm common pleas' Order.

III. **ANALYSIS**
   A. **Whether Appellant is a bail bondsman over whom common pleas had jurisdiction to revoke Appellant's authority to act.**

Appellant first argues that common pleas lacked subject matter jurisdiction to revoke his authority to post bail in Cumberland County because he is a licensed surety agent, not a bail bondsman.[6] Section 5746(b) provides that a court of common pleas may suspend or revoke a bondsman's authority to conduct business in that county

---

[6] The Commonwealth argues Appellant set forth no evidence to support that he is a licensed surety agent. We agree, but given our disposition, a remand is not necessary to accept evidence of same.

10

for good cause, or for any one or more of the following causes:

(1)     Violation of any of the provisions of this subchapter.

(2)     Fraudulently obtaining a license from the [Insurance D]epartment or fraudulently obtaining authority to conduct business under the provisions of this subchapter.

(3)     Upon conviction for any criminal offense under the laws of this Commonwealth or under the laws of the United States or any other jurisdiction.

(4)     Upon being adjudged bankrupt or insolvent.

(5)     Failing to pay any judgment rendered on any forfeited undertaking in any court of competent jurisdiction.

(6)     Any interference or attempted interference with the administration of justice.

42 Pa. C.S. § 5746(b). Pursuant to Section 5746(a), the Commonwealth filed a petition seeking to revoke Appellant's authority for violating subsections (2), (3), and (6). "Bail bondsman" is defined as "[a] person who engages in the business of giving bail as a surety for compensation." 42 Pa. C.S. § 5741.

This Court in *Liberty Bail Bonds* held that surety agents are not bail bondsmen. 8 A.3d at 1032. In reaching this conclusion, we reasoned that "[s]urety agents are explicitly excluded from the statutory definition of bondsmen." *Id.* However, since *Liberty Bail Bonds* was decided, Subchapter B of Chapter 57 of the Judicial Code was **amended**. Under the former law, "[p]rofessional bondsman" was defined as:

Any person, other than a fidelity or surety company or any of its officers, agents, attorneys, or employees, authorized to execute bail bonds or to solicit business on its behalf, who:

11

(1) engages in the business of giving bail, giving or soliciting undertakings, or giving or soliciting indemnity or counterindemnity to sureties on undertakings; or

(2) within a period of 30 days has become a surety, or has indemnified a surety, for the release on bail of a person, with or without a fee or compensation, or promise thereof, in three or more matters not arising out of the same transaction.

42 Pa. C.S. § 5741, *amended by* Section 2 of the Act of July 2, 2015, P.L. 110. Professional bondsman has been replaced with "[b]ail bondsman," which is **more broadly** defined: "[a] person who engages in the business of giving bail as a surety for compensation." 42 Pa. C.S. § 5741. Given the General Assembly's amended language, we cannot conclude that the rationale in *Liberty Bail Bonds* still controls. Because Appellant is "[a] person who engages in the business of giving bail as a surety for compensation," *id.*, common pleas had jurisdiction to consider the Commonwealth's Petition.

### B. Whether Appellant engaged in malfeasance.

Appellant next argues that he did not engage in malfeasance because the male client for whom he acquired a bail piece and took into custody admitted to leaving the state. Furthermore, Appellant contends there is no evidence that the client had a working telephone or a place of residence.

Common pleas concluded, based upon the evidence presented, that Appellant "hindered the administration of justice" by obtaining bail pieces "based on demonstrably untrue information." (Rule 1925(a) Op. at 5.) Common pleas recounted that Appellant asserted in his Petition of Surety for Bail Piece that the client "'left the state without notice and no new address,' was a 'flight risk,' and that 'all telephone number[s] [were] disconnected.'" (*Id.* at 3 (alterations in original).)

12

According to common pleas, this "made it appear to the Court that [the client] had permanently left the state without giving a new address, and that he could not be contacted because his phone numbers were all disconnected." (*Id.*) Common pleas found that Appellant's own witness, the client's ex-girlfriend, "bolstered the Commonwealth's case" because she testified that while caring for the client's children while he was away, she had no problems contacting him and that his phone was not disconnected. (*Id.* at 4.)

While true that the client indicated he went to California to visit his mother, there is no evidence this was a violation of the client's bail conditions. Even assuming it was, this does not address the other allegations in the Petition of Surety for Bail Piece that common pleas found were false, such as the lack of an address and no telephone. There is conflicting evidence as to these other allegations. While Appellant alleged in the bail piece that the client did not have a working phone or a residence, the client testified he lived at a specific address, at which Appellant found him, and his ex-girlfriend, as discussed above, testified that she had no problems reaching him by phone while he was away. Although common pleas did not make explicit credibility determinations, it is apparent that common pleas credited the client and client's ex-girlfriend, who testified on Appellant's behalf, over Appellant. Moreover, common pleas also appears to have placed weight on the fact that Appellant used a bail piece as a means of collecting debt from his client. Although Appellant denied these allegations, again common pleas did not appear to credit his evidence. It is well-settled that, as an appellate court, we may not substitute our factual findings for those of the trial court. *Commonwealth v. Russo*, 934 A.2d 1199, 1203 (Pa. 2007). Because there is evidence of record to support common pleas' finding, we discern no error in common pleas' Order.

**C. Whether Appellant was convicted of a misdemeanor, which he failed to report on his applications.**

Finally, Appellant argues the Maryland conviction for selling cigarettes without a license was not a misdemeanor, and therefore, he was not obligated to report it on his applications. He argues that the Court should focus on the elements of the offense and conclude it is not a misdemeanor **under Pennsylvania law**. However, that is not determinative. Under Section 5746(b)(3), a court of common pleas may revoke a bondsman's authority "upon conviction for **any** criminal offense under the laws of this Commonwealth or **under the laws of** the United States or **any other jurisdiction**." 42 Pa. C.S. § 5746(b)(3) (emphasis added). Appellant pleaded guilty in 2011 to violating Maryland Code Business Regulation Section 16-308, which is graded as a **misdemeanor** pursuant to Section 16-309(a) of the Maryland Code Business Regulations. Md. Code, Bus. Reg. § 16-309(a) ("[A] person who violates this subtitle is **guilty of a misdemeanor** . . . .") (emphasis added). A misdemeanor is a criminal offense. *See* Black's Law Dictionary 1089 (9th ed. 2009) (defining "misdemeanor" as "[a] crime that is less serious than a felony . . ."). It is not disputed that Appellant pleaded guilty to the offense. Therefore, we find no error in the trial court revoking Appellant's authority to act as a bail bondsman because he was convicted of a "criminal offense . . . under the laws of" Maryland. 42 Pa. C.S. § 5746(b)(3).

## IV. <u>CONCLUSION</u>

Common pleas possessed the authority to revoke Appellant's authority to act as a bail bondsman under Section 5746. We further conclude that there was evidence to support common pleas' finding of malfeasance and its reliance on Appellant's Maryland conviction. Accordingly, we affirm.

 

**RENÉE COHN JUBELIRER,** Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Commonwealth of Pennsylvania  :
                                       :
                 v.                :     No. 1695 C.D. 2018
                                         :
Gregoreos Giaffes,  :
                    Appellant    :

## O R D E R

**NOW**, January 10, 2020, the Order of the Court of Common Pleas of Cumberland County, in the above-captioned matter, is **AFFIRMED.**

 

_____
**RENÉE COHN JUBELIRER,** Judge